Frank Hawkins v. Commissioner.
Hawkins v. Commissioner
Docket No. 1642.
United States Tax Court
1944 Tax Ct. Memo LEXIS 62; 3 T.C.M. (CCH) 1135; T.C.M. (RIA) 44349; October 30, 1944
*62 Theodore B. Benson, Esq., 817 Southern Bldg., Washington, D.C., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. LEECH Memorandum Opinion LEECH, Judge: This proceeding involves deficiencies in income taxes as follows: 1938
$2,787.68
1939
6,374.26
The two issues involved are: (1) Whether the income from a trust created by the petitioner wherein he reserved the power to modify or alter the provisions with respect to distributions to the beneficiaries is taxable under section 22 (a) of the Revenue Act of 1938 and the Internal Revenue Code; (2) whether the petitioner is taxable on the net proceeds of certain policies of insurance on his life as ordinary income or as capital gains. All of the facts have been stipulated. [The Facts] The petitioner is an individual residing at Atlanta, Georgia. His income tax returns for the taxable years were filed with the collector of internal revenue for the collection district of Georgia at Atlanta, Georgia. On July 23, 1932, the petitioner transferred and assigned certain properties to the Citizens and Southern National Bank, as trustee, for the use and benefit of certain designated grandchildren. The trust indenture, *63 inter alia, contained the following pertinent provisions: "(a) The duration or lifetime of this trust shall be for and during the period of twenty years from the date of execution. For and during the first ten years of the trust hereby created, that is, until ten years from the date hereof, the net income arising from the investments of the principal shall be cumulative and added to the principal of the trust and invested and reinvested. "(b) Beginning on the date ten years after the date hereof and continuing for ten years thereafter, that is, during the second period of ten years of the life of the trust hereby created, the net income received and derived from the investments and reinvestments of securities comprising the then principal of this trust estate standing on the books of the trustee shall be paid and distributed equally to Charles Watson Tull, Jr., Frances Hawkins Tull and Rhesa Read Tull, share and share alike. In the event any of said three named beneficiaries should die during the continuance of the trust hereby created, then his or her issue shall receive its parent's share of the income and principal hereof, share and share alike per stirpes. "(c) On *64 the 23d day of July, 1952, viz.: twenty years from the date of this trust agreement, all of the then principal standing on the books of the Trustee shall be divided and distributed to Charles Watson Tull, Jr., Frances Hawkins Tull, and Rhesa Read Tull, equally, share and share alike, with a share for their issue per stirpes, should they be not then in life, and be assigned, transferred and conveyed to them in fee simple, whereupon the trust estate hereby created shall cease and terminate. Should any of said beneficiaries die leaving no child or children, his or her share shall be added to the share or shares of the survivor or survivors per stirpes.
"(d) Twenty years from the date of this instrument, that is, upon the dissolution and termination of this trust estate, the receipt or receipts of the ultimately receiving beneficiaries hereunder designated shall be full, final and complete discharge of any and all liability of the trustee for the principal or funds so assigned, transferred and conveyed to them." The indenture of trust conferred the broadest powers of management solely upon the trustee. Petitioner reserved no power to appoint a successor trustee. The only right *65 or privilege reserved by the petitioner is that contained in the following paragraph: "7. The Settlor has been fully informed and advised as to the distinction between revocable and irrevocable trusts, and as to the Settlor's rights in regard thereto, and after due consideration has decided by his own act that the trust created by this instrument shall be irrevocable insofar as the vestment of title in the beneficiaries is concerned, but the Settlor does specifically reserve for himself the sole election and right to modify or alter the within agreement by amendment executed by the parties hereto, wherein he may alter or modify the provisions of distributions as herein set forth to the beneficiaries." The trustee during the year 1938 received dividends in the sum of $1,687.50, and in the year 1939, the sum of $2,045. These amounts were included in the gross income of the trust in the respective years of their receipt. The respondent, in his deficiency notice, included such dividends in the petitioner's gross income for the respective taxable years. In 1938 the petitioner received $3,635.34 in excess of premiums paid, less dividends, on two $5,000 20-payment life policies taken *66 out with the Mutual Benefit Life Insurance Co. of Newark, New Jersey, which matured in such year. This amount of $3,635.34 was not reported by the petitioner as income in 1938. In 1939 the petitioner received $10,627.39 in excess of premiums paid, less dividends on three policies of life insurance taken out with the Prudential Life Insurance Co. of Newark, New Jersey. The petitioner did not report any part of such amount as income in 1939. The petitioner in his income tax returns for the year 1937 and prior years did not include in gross income the cash dividends on the aforesaid five insurance policies. The respondent included in the petitioner's gross income the amount of $3,635.34 in the year 1938 and the amount of $10,627.39 in the year 1939. The first question to be determined is whether the petitioner, as settlor, is taxable on the income from the trust under section 22 (a). [1] The answer depends on whether sufficient economic benefits have been reserved by the settlor to constitute him the "owner" within the purview of the taxing statutes. The respondent has determined that the petitioner is taxable upon such income. The basis of his determination is that by Paragraph *67 "7" of the trust indenture, the petitioner has specifically reserved to himself, "the sole election and right to modify or alter the within agreement by amendment executed by the parties hereto, wherein he may alter or modify the provisions of distributions as herein set forth to the beneficiaries". The petitioner contends that by such language he did "not reserve any definite or absolute right to alter or modify the provisions of distribution", but reserved "the right to alter or modify 'wherein he may alter or modify the provisions'." Thus, argues the petitioner, "The undoubted purpose of paragraph 7 is simply to provide that if by some possibility the right to modify or alter the provisions of distribution remained, then that it should be exercised, not by the petitioner alone, but 'by amendment executed by the parties here'." It is then contended that as the three grandchildren, who are the beneficiaries of the trust, are parties in interest, the agreement could not have been amended to alter or modify the provisions of distribution to them without their consent. The gist of petitioner's argument, as we understand it, is that the petitioner reserved no right to alter or modify *68 the provisions of distribution, but merely provided a saving clause whereby the provisions for distribution, if not full and complete, could be made so by amendment. Although the language used is somewhat confusing, we are not ready to accept the ingenious interpretation which the petitioner urges. *69 Paragraph 7 of the trust indenture is complete in and of itself. It was intended to provide for a single independent matter. Its only purpose was to reserve a right or privilege to the settlor. The parties stipulated only the bare indenture. Except that the notice of deficiency discloses that the petitioner is a man of ample means, no other surrounding facts or circumstances are made available that might aid us in determining the settlor's intent. We think the meaning of the language is that the settlor did not intend to reserve any right or power to revest any part of the principal or income in himself, but he did intend to reserve the right and privilege to change the distributions to the beneficiaries. If we are correct in the construction to be placed upon the language contained in Paragraph 7 of the trust indenture, the law is well settled that the grantor remains the "owner" of the fund and the income therefrom is taxable to him under section 22 (a). ; ; ; ; *70 ; . On this issue the respondent is sustained. The remaining issue is whether the net proceeds of five insurance policies on the life of the petitioner are taxable as ordinary income. The petitioner contends that to the extent of their cash surrender values, the policies were "evidences of indebtedness" within the meaning of section 117 (f) of the Revenue Act of 1938 and taxable as capital gains. Petitioner makes no argument nor refers us to any authority in support of his claim. It is the settled law that the term "evidence of indebtedness", as used in section 117 (f), excludes insurance and annuity contracts. It is equally well settled that the surrender of an insurance or annuity contract is not a "sale or exchange" as used in section 117 (a). ; ; ; ; cert. den., . *71 The respondent properly treated the net proceeds of the life insurance policies on the petitioner's life as ordinary income in the respective taxable years and his determination is sustained. Decision will be entered for the respondent. Footnotes
1. Section 22 (a) of the Revenue Act of 1938, so far as material here, is identical with the same section of the Internal Revenue Code, and reads as follows: (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing) of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *↩